IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

ROBERT FIELDS,

    Petitioner,

v.                                                                                                            Civil Action No. 3:08cv844

DOUGLAS B. VAUGHN,

    Respondent.

**MEMORANDUM OPINION**

Robert Fields, a Virginia inmate proceeding *pro se*, filed this action under 28 U.S.C. § 2254.[1] Fields challenges his May 2005 conviction for first degree murder. On February 12, 2009, Respondent filed a Rule 5 answer and motion to dismiss (Docket Nos. 5, 6) and provided Fields appropriate *Roseboro*[2] notice (Docket No. 8). Respondent contends that, *inter alia*, Fields's claim challenging the sufficiency of the evidence lacks merit, and his remaining claims are defaulted. Petitioner has filed a brief in opposition to the motion to dismiss. (Docket No. 10.) The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 2254 and 636(c).

---

[1] 28 U.S.C. § 2254(a) states in relevant part:

The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

Fields raises four claims in his Petition, which the Court summarizes below:

1. The trial court lacked subject matter jurisdiction because the Commonwealth never proved to the Grand Jury that the crime occurred in the jurisdiction of Henrico County. (Pet. 5.)

2. Prosecutorial misconduct in presenting an edited videotape of Fields's interrogation and confession to the jury. (Pet. 7.)

3. Insufficiency and unreliability of the evidence linking Fields to the crime. (Pet. 11-29.)

4. Ineffective assistance of counsel because trial counsel:

    A. Failed to challenge Deputy Gilkerson's testimony. (Pet. 32.)
    B. Failed to have two witnesses, Chauncey Williams and Wilbert Bryant, testify at trial. (Pet. 32.)
    C. Failed to locate, contact, or subpoena Howard Lee Payne, who could have testified regarding Fields's normal behavior the morning after the murder. (Pet. 33.)
    D. Failed to call T.R. Smith, Sr., who would have testified as to Fields's character. (Pet. 33.)
    E. Failed to properly cross-examine Investigator Strano of the Henrico County Police Department. (Pet. 34.)
    F. Failed to properly investigate the credibility of the Commonwealth's witnesses. (Pet. 34-35.)
    G. Failed to check phone records. (Pet. 35.)

The Court finds that the doctrines of exhaustion and procedural default foreclose this Court's review of all Fields's claims except Claim 3. The Court therefore first addresses Claim 3, challenging the sufficiency of the evidence, and then considers the defaulted claims.

## I. Claim 3: Sufficiency of the Evidence

Respondent does not dispute that Fields properly exhausted Claim 3, in which he challenges the sufficiency of the evidence as to his conviction for first degree murder. (Respt.'s Br. Supp. Mot. Dismiss & Rule 5 Ans. ("Respt.'s Br.") ¶ 26.) When evaluating a sufficiency of

the evidence claim, a court must ask "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).

Evaluating the sufficiency of the evidence does not mean that the federal court "'ask[s] itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* at 318-19 (*quoting Woodby v. INS*, 385 U.S. 276, 282 (1966)). Instead, the federal habeas court evaluates whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (*citing Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). Furthermore, "*all of the evidence* is to be considered in the light most favorable to the prosecution." *Id.* Finally, "federal habeas relief may not be granted unless the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Booth-El v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002) (*quoting* 28 U.S.C. § 2254(d)(1)).

Assessing the sufficiency of the evidence on direct appeal, the Court of Appeals of Virginia dismissed Fields's challenge to the sufficiency of the evidence on the merits. The Court of Appeals summarized the evidence as follows:

> [A]t approximately 6:00 p.m. on September 15, 2004, Debra Stroud discovered Karen Orellana's body in a bathtub in Orellana's residence. Orellana had been severely beaten and disfigured. Medical Examiner Dr. William Gormley testified that Orellana died from blunt force trauma to her head and chest. Gormley opined that Orellana's injuries had been caused by something "more robust than a fist" and were "consistent with stomping or of blows [by] something broad based."
> Deborah Simmons lived in the adjoining unit in Orellana's duplex. Simmons saw appellant enter Orellana's residence on September 14. Appellant's vehicle remained parked outside for the remainder of the day. At approximately 11:30 p.m., Simmons heard banging and shuffling noises emanating from Orellana's apartment. Simmons looked out her window and noted appellant's truck was still parked outside. The following morning, the truck was gone.

3

Simmons' daughter also heard thumping noises coming from Orellana's apartment the night before Orellana's body was found.

Scott Jiandani testified that he was friends with Orellana. He arrived at her apartment at approximately 1:00 p.m. on September 14. He parked behind appellant's truck and met appellant inside the apartment. Appellant discussed purchasing cocaine and gave Jiandani fifty dollars. Jiandani left the apartment and returned a short time later with crack cocaine. Appellant complained about the size of the cocaine and suggested he had been cheated. Jiandani left the apartment and spoke with Orellana and appellant by telephone later that evening.

Investigator Jennifer Strano executed a search warrant at appellant's residence. She discovered a pair of Nike sneakers bearing red stains. Appellant admitted the shoes were his. Testing revealed the red substance was blood which matched Orellana's DNA. Bloody footprints found at the scene of the murder were consistent with appellant's shoes.

George Robinson, Jr. testified that he was in a holding cell with appellant. Appellant informed Robinson he was in jail for murder, that it involved a drug deal, that he beat his victim, and that if he had the chance he would do it again.

Appellant provided inconsistent accounts of his knowledge of Orellana and her residence but eventually admitted that he was at the apartment with her at 11:30 p.m. on September 14 and that no one else was there at that time.

(Respt.'s Br. Ex. D (*Fields v. Commonwealth*, Record No. 2914-05-2, at 2-3 (Va. Ct. App. April 17, 2006)).) The Court of Appeals concluded that the jury had believed the Commonwealth's witnesses and rejected Fields's version of what happened, because "[t]he Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of first-degree murder." (*Id.* at 3-4.)

Under the pertinent standard of review, and after viewing the record in this case, the Court finds that a rational trier of fact could have found that Fields committed first degree murder. Furthermore, the decision of the Court of Appeals is neither: (1) contrary to or an unreasonable application of clearly established Federal law; nor, (2) an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Accordingly, Claim 3 will be DISMISSED.

4

## II. Procedural History: Direct and Collateral Review

On May 20, 2005, a jury sitting in the Circuit Court of the County of Henrico ("Circuit Court") convicted Fields of the first degree murder of Karen Orellana and fixed his punishment at life imprisonment. (Respt.'s Br. Ex. A.) Following an August 10, 2005 hearing, the Circuit Court entered a Sentencing Order on September 6, 2005, ordering Fields to serve a term of life imprisonment. (*Id.*) Fields pursued direct and collateral review of his conviction.

### A. Direct Appeal to the Court of Appeals of Virginia

After first filing a state habeas petition as discussed below, Fields appealed his conviction to the Court of Appeals of Virginia in January of 2006, raising three claims:

1. The trial court erred by instructing the jury on first degree murder.

2. Insufficient evidence existed to support his conviction for first degree murder.

3. The trial court erred by allowing testimony from Deputy Gilkerson, when the probative value of this testimony was substantially outweighed by the danger of unfair prejudice to the defendant.

(Respt.'s Br. Ex. B (Petition for Appeal, Record No. 2914-05-2, filed Jan. 9, 2006).) The Court of Appeals of Virginia denied his appeal in a *per curiam* opinion on April 17, 2006. (Respt.'s Br. Ex. D (*Fields v. Commonwealth*, Record No. 2914-05-2).) The Court of Appeals dismissed the first claim for failure to comply with Supreme Court Rule 5A:18,[3] which bars the Court of

---

[3] Rule 5A:18 of the Rules of the Supreme Court of Virginia, governing proceedings in the Court of Appeals of Virginia, states:

> No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice. A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to constitute a question to be ruled upon on appeal.

Va. Sup. Ct. R. 5A:18.

5

Appeals from considering arguments not presented to the trial court. (*Id.* at 1.) The Court of Appeals found the evidence sufficient to support his conviction as to the second claim, and found no error by the trial court as to the third claim. (*Id.* at 2-4.)

### B. Direct Appeal to the Supreme Court of Virginia

Fields continued his direct appeal to the Supreme Court of Virginia, raising the same three claims he raised in his direct appeal to the Court of Appeals. (Respt.'s Br. Ex. E (Petition for Appeal, Record No. 062319, filed Nov. 13, 2006).) In addition, Fields assigned error to the decision of the Court of Appeals denying his Petition for Appeal with respect to each of the three issues raised. (*Id.* at 3.) In a summary order, the Supreme Court of Virginia refused Fields's petition for appeal on March 23, 2007. (Respt.'s Br. Ex. G (Record No. 062319).)

### C. Collateral Review in the Circuit Court: First State Habeas Petition

On September 27, 2005, Fields filed a petition for a writ of habeas corpus in the Circuit Court. (Respt.'s Br. ¶ 4.) This September 2005 habeas predated his January 9, 2006 direct appeal by several months. In this first state petition, Fields raised the following claims, presented below verbatim as stated by the Circuit Court:

| | |
|---|---|
| A.(1) | His attorney was ineffective because he did a "restricted motion for discovery;" |
| A.(2) | He was denied due process when his attorney did a "restrictive motion for discovery;" |
| B. | The Commonwealth failed to provide certificates on analysis on Scott Giordiana and failed to test evidence scientific evidence [sic] at the crime scene; |
| C. | He did not kill Ms. Orellana. |

(Respt.'s Br. Ex. H (*Fields v. Commonwealth*, Case No. CL05-1182, at 1-2 (Va. Cir. Jan. 3, 2006)).)

6

On January 3, 2006, the Circuit Court dismissed Fields's state habeas petition. (*Id.*) The Circuit Court held that Claim A(1) lacked merit because counsel had filed a proper motion requesting the discovery to which Fields was entitled under Va. Sup. Ct. Rule 3A:11. The Circuit Court found Claims A(2), B, and C procedurally barred from habeas review by the rule in *Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974),[4] because they could have been raised at trial or on direct appeal. (*Id.* at 2-3.) The Circuit Court made this finding without addressing the legal consequence of the procedural circumstance it faced: Fields had not then fully pursued direct appeal of the Circuit Court's decision.[5] Fields did not appeal the Circuit Court's dismissal of his first state habeas petition to the Supreme Court of Virginia.

### D.  Collateral Review in the Circuit Court: Second State Habeas Petition

Fields filed a second state habeas petition in the Circuit Court on December 27, 2007, approximately nine months after direct review on appeal ended. (Respt.'s Br. ¶ 6.) Fields's second state habeas petition raised claims identical to those presented in his first state habeas petition. (*Compare* Respt.'s Ex. H *with* Ex. I.) The Circuit Court found all the claims raised in Fields's second state habeas petition barred by the successive petition rule, Va. Code § 8.01-654(B)(2). (Respt.'s Br. Ex. I (*Fields v. Angelone*, Case No. CL08-731, at 3 (Va. Cir. June 4,

---

[4] "A prisoner is not entitled to use habeas corpus to circumvent the trial and appellate processes for an inquiry into an alleged non-jurisdictional defect of a judgment of conviction." *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974) (barring claims that could have been raised at the criminal trial or on direct appeal from habeas review).

[5] In ruling on Fields's habeas petition, the Circuit Court observed that Fields had noted a direct appeal, but not yet filed a petition for appeal. (Respt.'s Br. Ex. H (*Fields v. Commonwealth*, Case No. CL05-1182, at 1 (Va. Cir. Jan. 3, 2006)).) Fields filed his Petition for Appeal in the Court of Appeals of Virginia on January 9, 2006. (Respt.'s Br. Ex. B.)

2008)).) That rule provides that: "No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." Va. Code § 8.01-654(B)(2). The Circuit Court relied on the successive petition rule despite the odd procedural posture under which Fields's first state habeas petition was dismissed.[6]

Fields appealed the Circuit Court's dismissal of his second state habeas petition to the Supreme Court of Virginia. The Supreme Court of Virginia dismissed the appeal as improperly perfected for failure to include assignments of error, as required by Rule 5:17(c)[7] of the Rules of the Supreme Court of Virginia. (Respt.'s Br. Ex. J (*Fields v. Vaughn*, Record No. 081734 (Va. Dec. 1, 2008)).)

### III. Exhaustion and Procedural Default

"In the interest of giving the state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing, a state prisoner must exhaust all available state remedies before he can apply for federal habeas relief." *Breard v.*

---

[6] If this case turned on their application, the procedural defaults announced by the Circuit Court would require close scrutiny by this Court. While *Slayton* and Section 8.01-654(B)(2) of the Virginia Code are generally adequate and independent procedural rules that can preclude federal habeas review, that fact "does not answer the question of whether the rule is adequate as applied in a particular case." *Reid v. True*, 349 F.3d 788, 805 (4th Cir. 2003) (*citing Brown v. Lee*, 319 F.3d 162, 170 (4th Cir. 2003)). In order to assess whether a procedural rule is adequate, "'[t]he question we must ask . . . is whether the particular procedural bar is applied consistently to cases that are *procedurally* analogous.'" *Id.* (second alteration in original) (*quoting McCarver v. Lee*, 221 F.3d 583, 589 (4th Cir. 2000)). Fields presents unusual procedural facts that likely would not readily compare to other cases.

However, Petitioner's later procedural default in presenting his claims for habeas relief to the Supreme Court of Virginia controls here. *See infra* Part III.B. Therefore, the Circuit Court's procedural default rulings do not control this Court's analysis of Claims 2 and 4(A)-(F).

[7] "Under a separate heading entitled 'Assignments of Error,' the petition [for appeal] shall list the specific errors in the rulings below upon which the appellant intends to rely. Only errors assigned in the petition for appeal will be noticed by this Court." Va. Sup. Ct. R. 5:17(c).

*Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (*citing Matthews v. Evatt*, 105 F.3d 907, 910-11 (4th Cir. 1997)). "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court." *Matthews*, 105 F.3d at 911 (*citing Spencer v. Murray*, 18 F.3d 237, 239 (4th Cir. 1994)). Exhaustion also demands that the petitioner fairly present his exact legal theory for relief to the state courts. *See Gray v. Netherland*, 99 F.3d 158, 162-64 (4th Cir. 1996). Where questions concerning exhaustion arise, the petitioner bears the burden of demonstrating that he properly presented his claim to the state courts in accordance "with the state's chosen procedural scheme." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994).

The related but distinct doctrine of procedural default provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard*, 134 F.3d at 619 (*citing Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). A federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (*quoting Coleman*, 501 U.S. at 735 n.1). Absent a showing of actual innocence or cause and prejudice, a procedurally defaulted claim is barred from federal habeas review. *Roach v. Angelone*, 176 F.3d 210, 221 (4th Cir. 1999); *see also Harris v. Reed*, 489 U.S. 255, 262 (1989).

### A. <u>Claims Not Properly Presented to the Supreme Court of Virginia</u>

As to the Petition before this Court, Petitioner never properly presented Claim 1, alleging the trial court's lack of subject matter jurisdiction, or Claim 4(G), that counsel was ineffective for

failing to check phone records, to the Supreme Court of Virginia. *See Matthews*, 105 F.3d at 911. Were Fields now to present these claims to the Supreme Court of Virginia, that court would find the claims barred under section 8.01-654(B)(2) of the Code of Virginia. *See Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000). That statute bars consideration in a second habeas petition of claims which could have been, but were not, raised in the first state habeas petition. Fields could have challenged the jurisdiction of the Circuit Court from the outset of his criminal proceedings, and at least some of the phone records he now raises were discussed at trial. Fields clearly had knowledge of Claims 1 and 4(G) prior to the time he sought postconviction relief.

Section 8.01-654(B)(2) constitutes an independent and adequate state procedural rule. *See Gray v. Netherland*, 99 F.3d 158, 163 (4th Cir. 1996). Claims 1 and 4(G) are defaulted, and not subject to federal habeas review unless Fields can show cause and prejudice for his default, or actual innocence. *Bassette v. Thompson*, 915 F.2d 932, 936-37 (4th Cir. 1990). Additionally, because Claim 1, alleging improper state jurisdiction, fails to implicate a federal right, that claim would not be subject to federal habeas review even if Fields were able to demonstrate actual innocence or cause and prejudice.[8]

---

[8] This Court lacks jurisdiction to review a claim that implicates no federal rights. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") "Whether a state court has subject matter jurisdiction over an offense is a question of state law." *Griffin v. Padula*, 518 F. Supp. 2d 671, 677 (D.S.C. 2007). A claim that a state court lacks jurisdiction under state law presents no federal constitutional issue for habeas review. *See Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994); *Hernandez v. Ylst*, 930 F.2d 714, 719 (9th Cir. 1991); *United States ex rel. Herrington v. Mancusi*, 415 F.2d 205, 209 (2d Cir. 1969). Claim 1 would not be cognizable on habeas review. *See Roach*, 176 F.3d at 216; *Wright v. Angelone*, 151 F.3d 151, 157-58 (4th Cir. 1998).

### B. Claims Found Procedurally Defaulted in State Collateral Review

Fields presented Claim 2, alleging prosecutorial misconduct, and Claims 4(A)-(F), alleging ineffective assistance of counsel, in his second state habeas petition to the Circuit Court. He appealed the Circuit Court's dismissal of the petition as successive, but the Supreme Court of Virginia refused his petition for appeal on the ground that Fields did not include assignments of error in the petition for appeal, as required by Rule 5:17(c) of the Rules of the Supreme Court of Virginia. This later procedural default bars review here.

"A basic tenet of federal *habeas* review is that a federal court does not have license to question a state court's finding of procedural default, if based upon an adequate and independent state ground." *Barnes v. Thompson*, 58 F.3d 971, 974 n.2 (4th Cir. 1995). Rule 5:17(c) constitutes an adequate and independent state ground for the denial of habeas relief. *Hedrick v. True*, 443 F.3d 342, 360 (4th Cir. 2006); *Mueller v. Angelone*, 181 F.3d 557, 584 (4th Cir. 1999). Therefore, Claims 2 and 4(A)-(F) are procedurally defaulted unless a valid excuse of cause and prejudice or actual innocence exists.

### C. Excuse for Procedural Default

Fields presents no argument regarding cause and prejudice that might excuse his procedural default. The facts underlying the claims before this Court all were available to Fields at the time of trial and in his state habeas proceedings, and he demonstrates no objective factor external to his own conduct that impeded his efforts to raise these claims in the state court. *See Breard*, 134 F.3d at 620.

However, Fields "does state that he did not kill Orenalla" [sic]. (Petr.'s Br. Opp'n Mot. Dismiss 7.) (Docket No. 10.) The Court therefore considers whether it should excuse his

11

procedural default on the basis of actual innocence. "Claims of actual innocence, whether presented as freestanding ones, *see Herrera v. Collins*, 506 U.S. 390, 417 (1993), or merely as gateways to excuse a procedural default, *see Schlup v. Delo*, 513 U.S. 298, 317 (1995), should not be granted casually." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) (parallel citations omitted).

Fields has not presented a freestanding claim of actual innocence in his federal petition. A gateway claim requires "new *reliable* evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324 (emphasis added). "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Id.* If a petitioner meets the burden of producing such evidence, the Court then considers "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" *House v. Bell*, 547 U.S. 518, 538 (*quoting Schlup*, 513 U.S. at 327-28). Ultimately, a petitioner asserting a gateway claim of actual innocence "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Id.* at 536-37 (*quoting Schlup*, 513 U.S. at 327). Fields proffers three subsets of "new" evidence not presented at trial, all of which fail to meet this standard.

 1. **Arguments as to Actual Innocence**

  a. **Weather Report**

Fields first offers a historical weather report showing that light rain occurred in Richmond, Virginia, at 7:54 p.m. on September 16, 2004, and at 12:54 a.m. on September 17,

2004. (Pet. 15-16.) At trial, Investigator Strano testified that she participated in the execution of a search warrant at Fields's residence on September 17, 2004. (May 19, 2005 Trial Tr. 142:18-143:6.) Strano testified that she noticed a pair of two-tone blue Nikes with red stains on the ground next to the stairs to the back porch, and took them into evidence. (May 19, 2005 Trial Tr. 144:16-145:4.) Stephen Rodgers, a forensic scientist with the Virginia Division of Forensic Science, testified that a DNA analysis of the blood stains on the Nikes recovered from Fields's home was consistent with the DNA profile of Karen Orellana, the victim. (May 19, 2005 Trial Tr. 227:24-228:6.)

Fields argues that the fact that the weather report shows that it rained in the Richmond area in the two hours prior to the execution of the search warrant at his home[9] shows that the Nike shoes recovered from the back porch of his home must not have had the victim's blood on them at the time the shoes were seized, meaning that the victim's blood "had to have been deposited [on the shoes] somewhere other than the crime scene," presumably in some manner that corrupted the evidence. (Pet. 14.) This speculative argument does not constitute the type of reliable evidence contemplated by *Schlup* to show proof of actual innocence. A weather report showing light rain in the Richmond area does not mean that it must have been raining at Petitioner's house or that the rain would have washed any blood off Fields's shoes.

Indeed, information about rain on September 16 and 17 is not entirely new. At trial, defense counsel questioned Investigator Strano about whether it may have been raining the night investigators executed the search warrant. (May 19, 2005 Trial Tr. 148:4-6.) Investigator Strano

---

[9] Investigators executed the search warrant at approximately 3:00 a.m. on September 17, 2004. (May 19, 2005 Trial Tr. 147:22-148:3.)

13

responded that although she could not recall whether or not it had rained, the grass was wet, and she admitted that water could wash away trace evidence. (May 19, 2005 Trial Tr. 148:7-18.) Despite the wet grass, Investigator Strano did not recall the sneakers being any heavier than she would expect a pair of shoes to be. (May 19, 2005 Trial Tr. 149:1-3.) On recross-examination, Investigator Strano testified that the chain of custody between Investigator Strano and Investigator Harver[10] was unbroken. (May 19, 2005 Trial Tr. 151:3-7.)

Even considering the information contained in the weather report, the Court cannot find it more likely than not that, on the basis of this "new" evidence, no reasonable juror would have found Fields guilty beyond a reasonable doubt.

### b. Phone Records

Fields also offers what appear to be phone records of outgoing and incoming calls for the phone number 726-4407. (Pet. 27-28.) At trial, Frank Lynch of Cavalier Telephone testified that in September 2004, the phone number 804-726-4407 was registered to Karen Orellana. (May 19, 2005 Trial Tr. 88:17-24.) Lynch testified that on September 14, 2004, the last outgoing phone call from that number occurred at approximately 1:00 p.m. and no calls were made on either September 15 or 16, 2004. (May 19, 2005 Trial Tr. 89:21-25.) Petitioner argues that the phone records he offers show that Lynch's evidence was insufficient to show that Fields committed the

---

[10] Investigator Harver of the Henrico County Police Department participated in this case as a forensic investigator. He testified at trial as to the forensic evidence discovered at the victim's home, including a footprint found at the crime scene consistent with Fields's Nikes. Investigator Harver testified that the Nikes had dark blood stains on the soles that may have faded since the time of the crime due to being treated by different laboratory techniques. (May 19, 2005 Trial Tr. 201:15-202:7.)

14

crime because Fields's records show phone activity from 11:30 a.m. on September 14, 2004, through 6:00 a.m. on September 15, 2004. (Pet. 26.)

Petitioner's phone records lack context and reliability. It is impossible for the Court to determine whether the records contained in the Petition are the same records to which Lynch testified. If they are the same records, they are not "new," and Fields merely presents this Court with new arguments regarding them. Fields's argument that some calls were answered after the victim's death or his arrival home, absent more, cannot support a claim of actual innocence. The record is silent, for instance, as to what a voice mail system "answering" a phone would show on a phone record. Even if Fields had impeached Lynch's testimony with this argument, the Court finds that this evidence, considered with all the other evidence, does not make it more likely than not that no reasonable juror would have found Fields guilty beyond a reasonable doubt.

### c. Letters from Deborah Simmons

Finally, Fields attached two letters from Deborah Simmons as Exhibits A and B to his Brief in Opposition of Motion to Dismiss. (Docket No. 10.) Deborah Simmons lived next door to the victim, and testified at Fields's trial. (*See generally* May 19, 2005 Trial Tr. 90:19-114:1.) Fields characterizes Simmons's letters as proof that Simmons "kn[ew] that he was not present at the time of the crime," and that the prosecutor withheld exculpatory evidence in the form of a statement Simmons wrote on the night the victim's body was discovered. (Petr.'s Opp'n Mot. Dismiss 3-4.)

Neither letter meets the necessary test to show actual innocence. In Exhibit A, the January 16, 2007 letter, Simmons refers to a statement she wrote on the night of the crime. This

letter does not characterize whether the information in this statement would help or hinder Fields's case. Its addition to the record below would have no discernible impact.

Simmons's statement in Exhibit B, the October 22, 2006 letter, that "Some things you testified to that I know is factual, because when this incident happened you were not around," lacks context and indicia of reliability. Exhibit B, like Exhibit A, is unsigned and unsworn. As such, neither letter can be considered *reliable* evidence. *See, e.g., Shelton v. Dir., Dep't of Corr.*, No. 3:08cv270, 2009 WL 790013, at *5 (E.D. Va. Mar. 23, 2009) (dismissing actual innocence claim where petitioner offered only his own sworn assertions of innocence, and did not obtain an affidavit from the individual he suggested possessed exculpatory evidence). Moreover, the statement in Exhibit B lacks context and contradicts Simmons's trial testimony regarding Fields's whereabouts. A reasonable juror would view Simmons's 2007 letter only in the context of her earlier and presumably contradictory statements. These letters do not constitute the type of evidence establishing that no reasonable juror would have found Fields guilty beyond a reasonable doubt.

### 2. Conclusion as to Claim of Actual Innocence

The Court's consideration of all of the available evidence, even including the above-discussed "new" evidence, shows that Fields cannot meet his burden of proving "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House*, 547 U.S. at 536-37 (*quoting Schlup*, 513 U.S. at 327). The evidence at trial established that Fields was seen at the victim's apartment shortly before her death, and Fields's truck was parked outside the victim's home when the victim's next-door neighbors noticed bangs and thumps coming from the victim's apartment. (May 19, 2005 Trial Tr. 94:4-97:5, 99:3-103:6.)

16

The victim's injuries were consistent with having been stomped or hit with something broad-based. (May 19, 2005 Trial Tr. 72:7-12, 75:1-7.) Fields had the victim's blood on his shoes. (May 19, 2005 Trial Tr. 226:19-229:3.) Investigators discovered footwear impressions at the murder scene that conformed to impressions of Fields's shoes. (May 19, 2005 Trial Tr. 215:1-218:3.) A fellow inmate testified that Fields confessed to beating the victim to death when a drug deal went awry, saying that he that he would do it again. (May 19, 2005 Trial Tr. 157:21-23.) Even taking into consideration the weather report, phone records, and letters Fields places before the Court, this Court finds that they do not lead to a conclusion that no reasonable juror would have found Fields guilty beyond a reasonable doubt.

Accordingly, the Court finds that Fields procedurally defaulted without excuse all claims except Claim 3. Claims 1, 2 and 4(A)-(G) will be DISMISSED.

## IV. Conclusion

For the foregoing reasons, Respondent's Motion to Dismiss will be GRANTED. The Petition will be DISMISSED.

An appropriate Order shall issue.

/s/ 
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 9-15-09